The next case on our calendar this morning is United States v. Blanco, December 19, 1980. Yes, good morning, your honors. This is Stephen Lewis representing the appellant, Virginia Blanco. Following the Supreme Court holding in the United States v. Davis, this conspiracy to commit a federal robbery is no longer a predicate crime of violence for a 924C conviction. A jury interrogatory in this case, however, found that the 924C conviction was based on both the conspiracy and the substantive bank robbery. But there was no interrogatory to ascertain whether the substantive bank robbery as the predicate crime of violence was founded upon a theory of aiding and abetting or based on Pinkerton conspiracy liability. If under Davis a conspiracy to commit a bank robbery is not a crime of violence, then Pinkerton liability, which finds its sole authority in the conspiracy, should not have been used by a jury in making that determination, and this should invalidate the verdict on the firearm count. The jury charge employed in this case was plain error under the holding in Davis. The district court employed the charge requested by the government and recited 924C3B, the so-called residual or risk of force clause, in defining crime of violence, which the Supreme Court has found to be unconstitutionally vague. The elements or, excuse me, the elements or force clause, 924C3A, was never given to the jury to define a crime of violence for the firearm offense. Additionally, a hybrid 924C3B definition, which incorporated a crime-specific or real-world approach by utilizing the phrase, quotes, as committed, was read to the jury. This, too, was expressly rejected by the Supreme Court in Davis, and the erroneous jury charge requires the vacatur of the firearms conviction. We are asking this court to send this case back for a new trial. The combination of the constitutional inadequacy of the trial counsel, the change of the laws that affect the firearm count, the erroneous 924C jury charge under United States v. Davis, and the district court's non-harmless abuse of discretion in allowing both the gun and drug prior bad act evidence, all created a perfect storm that ensured her conviction. I cited in my brief, United States v. Chronic, where the Supreme Court quoted a circuit judge who had written, quotes, while a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators, close quotes. As is set forth in Ms. Blanco's affidavits in support of her post-verdict motions, her family pulled resources and scrounged together $12,000 to hire a retained trial counsel, believing that because he was being paid privately, he would do the best job. But he failed to review discovery with her, failed to subpoena, interview, or even contact the witnesses she requested he speak with or present any semblance of a defense. The government stated in their brief, and undoubtedly I anticipate that they will say again today, that the evidence in the case was overwhelming. But that analysis is based upon the fact the trial counsel never employed the tools he had to prove to the jury that Marte, the principal bank robber, was a liar. Only Marte identified Virginia Blanco. The other cooperating bank robbers could not say that he ever identified her to them. How do you satisfy the requirement of showing that if he had done any or all of these things, the result probably would have been different? Judge, under a Strickland analysis, I think that the criteria is that there is a likelihood that the result would have been different. That's what I just said. And the cumulative effect of all the things he did not do, I suggest if you were to look at them cumulatively, would leave one with the impression that there is a manifest injustice in this case. That's just not the standard, let's take them one at a time. How do you show that if he had reviewed the discovery with the defendant, there would have been a likelihood of an acquittal? What was there in the discovery that would have led to such a result? After the first jury was blown on May 1st, excuse me, after the first jury trial was blown on May 1st, the discovery, additional discovery was given now to Mr. Solari because he had filed a notice of appearance. And it was the wheelman Andres Cruz who in fact gave a post-arrest videotaped statement to the police, the FBI, where he in fact said that Marte had told him they had been casing the bank for a year and that another one of the armed bank robbers had told him that he was involved casing the bank for six months. Meanwhile, Virginia Blanco had only started in the bank three months earlier. The jury was never able to hear that. And accordingly, I believe that was exculpatory and it should have been presented. Remember also that Andres Cruz should have been presented by whom, in what context? By the trial counsel. The trial counsel learned of it how? He learned of it by receiving... Well, the question is, I don't know if he ever learned of it. Ms. Blanco learned of it after I played the discovery desk to her after I was involved in that. Until that point in time, I have no way of knowing whether Mr. Solari, the trial counsel, actually ever reviewed that discovery desk. According to her after David, he never reviewed it with Ms. Blanco before she was incarcerated on July 26th of 2016. When did he get it? May 3rd. Sorry? He received... Yes, Judge Kaplan. He received that discovery desk on May 3rd, 2018, before the trial commenced on July 10th, 2018. The evidence that that would have presented was one piece that demonstrated that Ms. Blanco was not the person who was giving inside information that Marte and Martinez had been casing that back for an extended period. But that just doesn't follow, does it? Because they may have been casing it since Lincoln was president, but she could still have given inside information. Isn't that right? That is absolutely true. But if you look at the other information, I think it's important. For example, and remember, these names were given to the jury on the day of jury selection. And one of them was Saad Khalil, and the other was Gigi Rabbati. The government's position was that it was obvious that there was an insider because Marte went into the bank, and he knew exactly where the vault was. And he also knew exactly that he needed a manager to open the vault. That would have been countered if he had subpoenaed Saad Khalil and Gigi Rabbati, employees that were working that day, and had told the FBI that Marte ordered Khalil to take him to the vault, and that Rabbati said she told Marte he needed a manager to open the vault. This evidence would have disputed the government's theory that Marte had been given information by Blanco. It was critical, if nothing else, that he interview and speak to these witnesses as requested by Blanco, which he never did. And the affirmation that he submitted, meaning trial counsel, does not dispute that he never contacted or interviewed any of the witnesses. The last-minute drug evidence is another example. In that particular case, affidavits were submitted as part of the post-verdict motions practice that Rapazzo and Felix Pena gave notarized statements saying they were never drug partners with Marte, and that Marte's assertions were lies. Remember, Marte was the key to the government's success in this case. It was necessary for trial counsel to prove that he lied. Anything that he could have for a jury to find Ms. Blanco not guilty, that was never developed. Rapazzo said that he was never his drug partner. Felix Pena said that he was never a drug partner with Marte, despite the fact that he testified to that. Another example is that- Mr. Lewis, you're over time. You've reserved a couple minutes for rebuttal. Would you like to take those now, or do you want to come back after the government? I think it'd be prudent to come back. Thank you, though. All right. Very good. Thanks very much. We'll hear from the government. May it please the court. My name is Jamie Bagleyster. I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal, and I also represented the United States in the proceedings below. The court should convicting the appellant of conspiracy to commit bank robbery and the use of a firearm, which was discharged. First, I'll address the 924C argument that Mr. Lewis started with. The jury in this case, as he said, made explicit that the 924C conviction was predicated on both bank robbery and bank robbery conspiracy. Because bank robbery is a crime of violence under the force clause, the appellant cannot now take advantage of the holding of the Supreme Court in Davis, which speaks only to the residual clause definition of a crime of violence. Let me ask about that, though. He's saying as well that the conviction for bank robbery itself, the substantive crime, was unclear as to whether the jury was relying on aiding and abetting or on Pinkerton liability, which itself could be called into question by Davis as an adequate predicate. What is your response to that lack of clarity in the record? Yes. Pinkerton liability is one method of committing a crime. It does not render an offense a conspiracy. A bank robbery charge does not become a conspiracy charge or stop qualifying as a crime of violence under the force clause just because Pinkerton liability is considered by the jury. Davis does not in any way limit the applicability of the force clause, nor does it affect the theory of liability or call into question the theory of liability upon which a force clause offends. I have a problem with that argument. Pinkerton presupposes the existence of a conspiracy. You get a Pinkerton charge only if the conspiracy is proved, and that's what Judge Seibel did here. And if the conspiracy is proved and the crime, the bank robbery is committed in furtherance of the conspiracy, and it's committed by someone other than the defendant, and one or two other requirements that I won't try to add from memory, you can get a conviction of the substance offense essentially on the ground that the guy who did the bank robbery was a party to the conspiracy, and the bank robbery was foreseeable to the conspirator, the defendant, who gets convicted on Pinkerton. Why doesn't that make a problem here? Because the problem is all stemming from the Supreme Court's decision in Davis, and all that Davis does is it looks to the language in the residual clause. What the jury is asked to do is to determine whether the defendant is guilty of using or is for that 924C charge. The question of whether that predicate act is a crime of violence is a question of law, and as a matter of law, bank robbery is a crime of violence under the fourth clause. So the jury is just being asked to determine what the predicate act is for the 924C count, and here the jury determined that the predicate act was bank robbery. I'll move then, Your Honor, to the next point that was raised by Mr. Lewis, which was the ineffective assistance of counsel claim. The district court did not abuse its discretion in denying the appellant's Rule 33 motion for ineffective assistance. First, the motion was untimely, and there was no excusable neglect, but even if considered on the merits... I didn't see in the record that you objected to the district court's decision to proceed to address the merits of the Rule 29 and Rule 33 motions. She said she was doing so as a matter of case management and not making a finding of excusable neglect, but did you all object at the time? Did you cite any prejudice? No, Your Honor. At the time, the district court was very clear in that this determination was only for case management purposes and that the government would have the opportunity to litigate whether excusable neglect had been shown, and in looking at the four factors to be considered by the court in determining whether excusable neglect was shown, whether the government objected is not one of those factors. So what prejudice would you point to particularly? There was a delay of a couple months, right? Yes. So it was five and a half months from the council was appointed. It was more than that, nearly seven months from the time that the motion should have been made, and there was significant prejudice to the government, most notably the fact that memories fade over that period of time and that two of the cooperators in the case had been sentenced. One of the individuals who testified at the appellant's trial had been sentenced. So that delay in time causes real prejudice to the government. It makes meetings with witnesses much more difficult, and it makes those meetings in part more difficult because time has elapsed and memories have faded. Okay, so that's just a generic kind of prejudice, although I guess you're saying that two of the cooperators who, by the way, received far less onerous sentences than Ms. Blanco did, whose participation was somewhat more remote. She sentenced, correct, in a three-year supervised release, whereas Marte and Martinez, I guess, got a couple of years. Could you address the discrepancy? That was concerning to me. Yes, I would be happy to. Let me address both parts of your question. In terms of prejudice, I do believe there's a specific prejudice here, and that is in the sentencing of, in particular, Mr. Martinez, who was one of our witnesses at trial and was sentenced in that time delay. So I do believe that that's more than just the generic, there is time that expired. I would also say, with respect to your question of the sentences, there are two points on that question. First, the three individuals, the two witnesses who testified at trial, Marte and Martinez, were cooperating witnesses for the government. They had accepted responsibilities for their crimes, they had pled guilty, and they had fully discharged their responsibilities as cooperators, including through testifying at the appellant's trial, which, of course, always carries great risk to it. What was the risk here? Your Honor, there is always a risk with respect to outing an individual as someone who is cooperating with the government. Here, they took the stand, they spoke against their co-conspirator, they made their cooperation with the government public, and that does place them at great risk. And before Judge Seibel— Risk from this woman? Your Honor, I wouldn't feel comfortable speculating about risk from this particular woman and what could happen. However, these individuals— You just speculated about risk from whom? Your Honor, it is certainly possible that there could be risk from this woman or other people in their communities who now know that they have cooperated with the government and provided the government with information. I would also note— At the same time, Mr. Marte was the one who burst into the bank brandishing the gun and leaped over the counter and perpetrated the robbery that endangered a lot of people when he was there in a way that nothing that Ms. Blanco did endangered people. It's a marked disparity, I have to say. Your Honor, I would note that the appellant's involvement in this crime was not remote. The appellant's involvement was a critical piece to this crime. This crime required an insider. She used her position of trust, and so a substantial incentive for her was appropriate. This robbery could not have happened without her. She planned the robbery with Giovanni Marte. She knew that he would be bringing a firearm into the bank. She provided him with the information that was critical to the crime's success. And she did all of this knowing that her co-conspirator would be there. Wait, you're not seriously telling us that you thought that you think she was more culpable than the other two men, are you? Your Honor, I am not saying that she was more culpable than the other two men. I am simply saying that she was culpable. A substantial sentence was appropriate for her. And the reason why her sentence is different than the sentences of the other two men is also explained by their different positions before the court, two of them having been— You've really—you've ducked Judge Carney's question about the disparity of sentence. You haven't told us anything other than essentially pablum about it. Let me ask you something else. Do you think Judge Seibel adequately addressed the point that Ms. Blanco raised, that her counsel not only didn't call witnesses but never interviewed them? I found that troublesome. Your Honor, first, I want to note I do not intend to duck the question. I do believe that the differently situated— You have limited time, so just move on. I heard your answer. I've heard these answers enough. So, on that— Understood, Your Honor. Go ahead. On the question of investigating witnesses in this case, the witnesses that the appellant claims should have been investigated and called to testify would offer very limited probative testimony and carry with them significant downside risk. And that limited probative testimony— I can understand why he might have decided not to call them, but my concern was his apparent failure to even interview them. Well, one way that he would know from before investigating, for example, is the testimony that was allowed in by Judge Seibel with respect to appellant's prior drug dealing. So, for Mr. Raposo and Mr. Pena, was very limited amounts of testimony. And Judge Seibel was very clear on the limited amount of testimony that could come in on those points. So, for that reason, it would be clear that any testimony that Mr. Raposo or Mr. Pena could have shared with the court would necessarily be highlighting that limited testimony and be of limited probative value for that reason. So, that is one reason that was out even doing the investigation. Trial counsel could fully have known or could have known what limited probative value there would be. I would also note here that the appellant has to be able to show prejudice and has to be able to show that but for that investigation of those witnesses, there is a reasonable probability that the result in this case would have been different. And trial counsel cannot do that. Those witnesses carried with them enormous downside risk and they would only have been providing very limited probative testimony. And trial counsel's performance was not ineffective and the evidence in this case was overwhelming against the different results had trial counsel further investigated those individuals. All of this drug evidence, I mean, this just seems to me overwhelmingly prejudiced and into testimony was very limited and circumscribed. The government proposed bringing forth more evidence. And very powerful. She was tied up in white plains. Very powerful. Your Honor, the drug evidence that was admitted was limited. It came with two limiting instructions both at the time of the testimony and during the charge of the jury. And it was not any more sensational than the appellant's conduct which was planning a very dangerous bank robbery with her boyfriend. So it was not substantially outweighed by any prejudice. And what was brought forward was very limited and was relevant because it completed the story of the conspiracy and it showed how Ms. Blanco and her co-conspirator Marte developed the relationship of mutual trust that they needed to do in order to commit this crime together. Thank you very much. I think we have your argument. We'll hear a rebuttal from Mr. Lewis. Thank you, Judge Farney. I did tell you that the word overwhelming would be used. And again, I say that the only reason that there was this analysis is because trial counsel did virtually nothing to really protect her The issue of untimeliness, and I highlight that on January 4th, I wrote to the court. I indicated that I would be traveling out of the country. I indicated that Ms. Blanco was about to give birth in prison in February to her third child. And I asked for 60 days to bring post-verdict motions. There was never, never any objection voiced by the government. No letter, no telephone call, nothing. Had there been, then possibly it could have been done sooner. But there was no objection. The whole issue of the drug evidence versus the gun evidence is really problematic as Judge Parker seems to address. Two weeks before the trial was scheduled to start in May, the government sought permission from Marte to testify about the defendant's prior instances where she assisted him with the handling of guns to show the so-called trusted relationship and to complete the story to explain how a working mother with no prior criminal history would have been involved with him in the commission of a bank robbery. Judge Seibel questioned, why are you waiting to the last minute? She allowed it. And I don't quarrel with that because there was relevance and it may have been appropriate for that bad act evidence to be utilized by the government to establish the trusting relationship. What I have a problem with is that approximately one week before the start of the trial in July, the government again sought permission to elicit from Marte evidence of her drug dealing with Marte in connection with Carlos Raposo, her son's father, and her cousin Felix Pena. This again was justified again to be able to establish the trusted relationship, which was the same rationale used for the evidence. Judge, borrowing football parlance, this was the equivalent of Mr. Lewis, because time is short, I want to interrupt for a minute, please. I wonder whether you have, I see in your reply brief, I'm just flipping back that you point to your Pinkerton argument, but has any court held that sustained that argument where it's unclear whether the jury convicted on a Pinkerton theory or an aiding and abetting theory on a listed crime of violence under the force clause, that that is rendered insufficient by Davis? Judge, I thought it was an argument of first impression. However, in preparing for this argument this morning, last night, I came upon United States v. Rodriguez, 2020 U.S. District Lexis 66715, Southern District of New York, that was decided on April 15, 2020. And Judge Haight, District Court Judge Haight, at Paragraphs 48-49, addresses the same issue. And in fact, as part of his decision, he granted 2255 motions and vacated the judgment. But it's the same carryover on the Pinkerton argument that I've advocated. Judge, you don't need to go any further in evaluating the trial counsel's effectiveness in this case than looking at the opening statement. For him to say all that the government had was some boyfriend girl theft, and that's it. He never addressed the lies that she told to the FBI, and that needed to be addressed. There's been no 2255 in this case, is that correct? I believe it's Judge Parker. Judge Parker, there was a 2255 that was submitted pro se by Ms. of appointing new counsel and relieving trial counsel. But it was premature because she hadn't been sentenced. So in answer to your question, a 2255 was submitted, but it was pro se, and it was premature. All right. Thank you very much. Thank you both for your arguments. We'll take the matter under advisement. Thank you, Your Honors. Thank you. Thank you both.